## BYERS v. HUSSEY.

Where a surety seeks to be discharged on the ground of extension of time the controlling question is was the extension of such a character as to bind the creditor, and thereby preclude him from pursuing his remedy against the principal.

*Appeal from District Court of Arapahoe County.*

IN November, 1874, William N. Byers gave his promissory note for $2,860 for money borrowed, payable in ten years, to the Denver Co-operative Loan, Building and Homestead Association or order, with interest at ten per cent per annum. The interest was payable, one-twelfth part monthly ; the principal was payable 1-120 part monthly, without grace. In January, 1875, Mr. Byers gave another note for $2,920 for money borrowed, payable in the same manner. The complainant, as it was contended, signed these notes as surety, and made conveyance to Hussey, the appellee, of the real estate in controversy, to be held in trust to secure the payment of the notes. Mr. Byers, the principal debtor, continued to pay the installments on these

notes, both the interest and principal, as required by the terms of the notes, until the month of April, 1876. In May, 1876, the association, it was contended, adopted an amendment to its constitution, releasing all who chose to avail themselves of the privilege, from the monthly repayment of the 1-120 part of the principal of the notes given by them to the association, and further providing for the non-payment of the principal until the expiration of ten years from the date of the notes. Mr. Byers, it was contended, entered into this new agreement, availed himself of the privilege, and continued to pay interest only, until November, 1876, when he ceased the payment of interest, not having paid any part of the principal of his two notes after April, 1876. The association accepted and receipted for the interest by its treasurer, Rubidge, regularly, for some six months, that is from April to November. This change was made and entered into without the knowledge or consent of the complainant.

The bill alleged among other matters that the association was a "voluntary association, composed of numerous individuals for private purposes, and of whose particular interests, if any they have in said deeds of trust mentioned in said bill, said plaintiff is not informed ; and that said association, so composed as aforesaid, as said plaintiff is informed and believes, is not authorized by law to take, hold, or purchase, or to grant, bargain, sell, and convey real estate in any manner whatsoever."

The constitution of the association provides among other things that :

"The board of directors shall from time to time select two men, not members of this association, to act as trustees for the association, to whom shall be conveyed all property belonging to this association or held by it as security. These trustees shall perform the duties and trusts imposed upon them, and shall receive a compensation to be fixed by the board, not exceeding that allowed by the courts of this Territory for similar services."

Messrs. France & Rogers, for appellant.

Mr. A. C. Phelps, for appellee.

Elbert, J. This was a bill for an injunction and other relief. The complainant, Elizabeth M. Byers, alleges in her bill:

"That on or about November 7, 1874, William N. Byers made, executed and delivered to the Denver Co-operative Loan, Building, and Homestead Association, his promissory note for $2,860, with annual interest at ten per cent; said note payable to said association, or to its order, ten years after date, as follows: 'The one hundred and twentieth part of said principal sum, and the one-twelfth part of the annual interest thereon, at the rate of ten per cent per annum, monthly, on the first Thursday of each month, without grace after the date of the said note, until said note was fully paid.' That complainant signed said note, as surety merely, for the said William N. Byers, and not otherwise, of which the said association had notice; that for the purpose of securing the payments of the said note, and of indemnifying the said association on account of indorsement, etc., the complainant executed and delivered to the respondent, Hussey, a deed of trust of certain lands in the city of Denver, for the use, etc., of the said association, with power of sale, etc., in case of default in the payments of said note.

"That said deed was duly recorded, etc., and reference prayed thereto for greater certainty; that on or about January 8, 1875, William N. Byers made, executed and delivered to said association, a certain other note, for the sum of $2,920 (payable in like manner as the first; that complainant signed the said (last mentioned) note, as surety merely, and made, executed, and delivered as surety, to Hussey, the respondent, for the same purposes, a second trust deed, upon the same real estate, which was duly recorded, etc.

That before the said notes, or either of them, became due and payable, that is, about the month of April, 1876, the said association, together with the said William N. Byers,

and the said Hussey he, the said William N. Byers, being the principal debtor and maker of the said notes, and the said association then and still being the owner and holder of said notes, without the privity, knowledge, procurement, or consent of complainant, changed and extended the times of the payments of said notes, and then and there entered into and effected a new and different contract from the said promissory notes so made, executed and delivered, by the said complainant, as aforesaid, and other and different contract than the said promissory notes, for the payment of which, according to the tenor thereof, the complainant had made, executed, and delivered the said deeds of conveyance in trust as aforesaid.

That respondent pretends that complainant is still holden as surety for the payment of said notes, and that the said lands are still liable for the payment of said notes ; that the conditions of the deeds of trust have been broken ; that the lands have thereby become liable to be sold, according to the covenants, etc., in said deeds mentioned, for the purpose of paying said notes; that he, as trustee, has authority and power to dispose of and sell said lands, etc., and to make, execute and deliver deeds of conveyance of the same, to the purchaser or purchasers, and to deprive complainant of all her right, title, and interest in and to said property. Whereas, the complainant charges that the association has released complainant from her liability as surety upon the notes, has discharged the property described, from all liability as security for the payment of said sums of money, and each and every of them. That the complainant is seized in fee, and is in the actual occupation and possession of the same, and that the said deeds of trust are a cloud upon the title of complainant.

That Hussey, pretending as aforesaid, and at the request of the association, and assuming to act as trustee, under and by virtue of the deeds of trust, threatens that he will, on the 22d day of June, 1877, sell the lands, etc., for the purpose of paying the said sums alleged to be due upon

the said notes, together with alleged interest due thereon, etc., and to make deeds of conveyance to the purchasers, etc., and thereby create a further cloud upon the title of complainant.

The complainant has requested him to refrain, etc."

Upon this statement the complainant prays for surrender and cancellation of the deed of trust, and decree of discharge as surety from the said notes, etc.

The answer denies that the complainant sustained the relation of surety, and also denies the alleged change in the terms of the contract.

Proofs were taken and upon a final hearing the bill was dismissed. The complainant appeals to this court.

If the relation of surety be admitted, the proofs by which complainant supported her bill did not warrant a decree in her favor.

The Denver Co-operative, Loan, Building and Homestead Association was a voluntary association composed of numerous members, and governed by a constitution and by-laws. Article XIII of the constitution under which the association was organized, provided as follows :

"Article XIII. The Loan Department. Section 1. Whenever the funds of the association warrant it, one or more awards or loans shall be made at an advance of not less than thirty per cent premium, which loan or loans, with the interest thereon, shall be repaid at the rate of the one hundred and twentieth part of said loan or loans, and premium, and the one-twelfth of the annual interest monthly."

The notes given by William N. Byers and the complainant were made payable in conformity with the requirements of this article, and are as follows :

" $2,860. DENVER, COL., *November* 7, 1874.

On or before ten years after date, for value received, I promise to pay the Denver Co-operative Loan, Building and Homestead Association, or order, the sum of two thousand eight hundred and sixty dollars, with annual interest at the

rate of ten per cent per annum, in manner following, to wit: the one hundred and twentieth (1-120) part of the said sum, and the one-twelfth (1-12) part of the annual interest thereon at the rate of ten per cent per annum, monthly, on the first Thursday of each month, without grace, after this date, until this note is fully paid.

WM. N. BYERS.
E. M. BYERS."

"$2,920.          DENVER, COL., *January* 8, 1875.

On or before ten years after date, for value received, I promise to pay the Denver Co-operative Loan, Building and Homestead Association, or order, the sum of two thousand nine hundred and twenty dollars, with annual interest at the rate of ten per cent per annum, in manner following, to wit: the one hundred and twentieth (1-120) part of said sum, and the one-twelfth (1-12) part of the annual interest thereon at the rate of ten per cent per annum, monthly, on the first Thursday of each month, without grace, after this date, until this note is fully paid.

WM. N. BYERS.
E. M. BYERS."

The records of the meetings of the stockholders of the association kept by the secretary show, that at a meeting held April 6, 1876:

"On motion, Mr. Pierce was given time to draw up an amendment to the constitution, to be presented and acted upon at the next meeting, as follows: To Section 1, Article XIII. 'It will be permitted at the option of any borrower, he giving the treasurer thirty days' notice of such wish, to omit the repayment of any portion of the principal of his loan, until such time as his note shall become due, or the affairs of the association shall be closed.' "

This was a *proposed* change of the constitution of the association which, if adopted by the association, and acted upon by them and the principal debtor, would materially change the terms of the contracts. It was a proposed ex-

tension of time upon all the monthly payments of principal stipulated for in the notes.

In *Winne et al.* v. *Colorado Springs Co.*, 3 Col. 161, the well-settled rule is laid down, that where sureties seek to be discharged on the ground of extension of time, the controlling question is, was the extension of such a character as to bind the creditor, and thereby preclude him from pursuing his remedy against the principal? If yea, even if the extension be but for a day, the sureties are exonerated, otherwise they are held.

Was the amendment to the constitution of the association ever adopted, and was it afterward acted upon by the association and Mr. Byers, in such a manner as to bind the association, and preclude it from pursuing its remedy against Byers on the notes? It does not appear from the secretary's record that this amendment ever passed. The record of the meeting held May 4, 1876, specifies the amendments that passed at that meeting but makes no. mention of this.

The record is as follows:

"DENVER, COLORADO, *May* 4, 1876.

The regular monthly meeting of the Denver Co-operative Loan, Building and Homestead Association met at the usual place. A quorum present. Peter Winne, president, in the chair. Minutes of the last regular meeting read. Approved. Money was then offered and none sold. The meeting then proceeded to take action on the amendments to the constitution, and the first one, viz.: To section 1 of article 13, 'That the per cent of premium be reduced from thirty (30) to ten (10) per cent,' was, upon motion of Mr. Fay, adopted. The second amendment was also carried with only one dissenting vote, viz.: To an amendment passed January 4, 1874, to section 8, of article 13, 'That the penalty for paying loans be reduced from 5 per cent to one per cent,

after May 1, 1876. Money was again offered for sale with the following results :

\*    \*    \*    \*    \*    \*    \*    \*

On motion, meeting adjourned.

Attest,                           PETER WINNE, *President.*

W. H. PIERCE, *Secretary.*"

Mr. Winne, however, tesifies that he was president of the association at that time, and that the amendment passed at the meeting of May 4th, but that there was no record of it. If it be admitted that such an amendment did pass as testified to by Mr. Winne, we are confronted with an objection that, as between the association and Byers, is fatal to the validity of the amendment.

Article XX of the constitution of the association provides that "the constitution shall not be altered or amended, except at an annual, semi-annual or special meeting of stockholders, with the consent of three-fourths of the stockholders present, and upon at least thirty days' previous notice."

There is no claim that the amendment was passed at either an annual, semi-annual or special meeting. On the other hand, it is clear that it was not. The semi-annual meetings were fixed on the first Thursday of February and August of each year. A special meeting had to be called by published notice. No annual meeting is provided for, except inferentially, by the provision fixing the election of officers at the semi-annual meeting on the first Thursday of February of each year.

Doubtless it was competent for the association to pass a valid amendment to their constitution at a time other than that fixed by the constitution, the stockholders all being present and assenting thereto, but in the absence of such assent, the amendment would be of no validity as between the members of the association. This irregularity would not have availed against a debtor who was not a member of the association, and had dealt with its officers and agents in good faith, upon the strength of the amendment. But it must be borne in mind that Mr. Byers was a member of

the association, with full knowledge of its constitution and by-laws, and was bound to take notice that this amendment was of no validity.

If the treasurer, who was the financial agent of the association, acted upon this amendment, Byers was bound to take notice, as a member of the association, that he acted without authority. It is claimed by counsel that this action was ratified by the association, but they fail to state how. Certainly not by any formal ratification, as by a vote at any meeting at which all the stockholders were present. The acts of the treasurer, as we have said, would not avail as a ratification by the association, for Byers was bound to take notice of his want of authority.

Long continued and habitual disregard of partnership articles may be regarded, as a waiver. A waiver may also be implied from silence or neglect long continued and fairly open to no other explanation than that the parties understood the provision disregarded to have no force ; so if the silence or non-observance be brief, but strengthened by acts of the partners, opposite in their nature and effect to such provisions, the same inference may be made. Parsons on Part. 238.* But the disregard of this constitutional provision of the association by a limited number of the members upon a single occasion cannot be regarded as an abandonment of the provision by the association. Nor is a waiver fairly inferable from silence, where there was no record made of the irregular proceeding, nor proof that it was known to the members.

It cannot, therefore, be said that there was any valid agreement between Byers and the association for an extension that would have precluded the association from pursuing its remedy on the notes executed. This being the case, the surety cannot be discharged under the rule laid down. The complainant was not deprived of or delayed in the assertion of her equitable claim to pay the debt and become subrogated to the rights and remedies of the creditor against the principal debtor. Even if this point was not

fatal, we doubt if we could say that Byers ever, in fact, accepted or acted on the terms of the amendment. Upon this point the testimony of Byers, and Rubridge, the treasurer, is in direct conflict. There is no pretense that Byers ever gave the thirty days' notice required by the amendment. It was not waived in terms, but may have been by the acts of the parties. The pass-book in which it was customary to make the entry of his monthly payments of both principal and interest in separate columns, in part corroborates Byers, but in so far as it shows no payment of principal for the month of May, it corroborates Rubridge, as the payment of principal for that month did not come within the terms of the proposed extension.

Again, Hussey was but a naked trustee, and the beneficiaries under the deed of trust should have been made parties defendant. The fact that the association was a voluntary association, composed of numerous members, might avail as a reason for not making them all defendants, but some portion of the members or officers should have been made defendants as representatives of the interests of all. Story's Eq. Pl., §§ 97, 107, 116 ; 2 Perry on Trusts, §§ 873, 875.

The decree of the court below is

*Affirmed*